Nos. 23-1633, 23-1634, 23-1641

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., ET AL,
*Plaintiff-Appellants in No. 23-1641,*

*v.*

DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, ET AL.,
D. Del. No. 1:22-cv-00951

———————

GABRIEL GRAY, ET AL.,
*Plaintiff-Appellants in No. 23-1633,*

*v.*

ATTORNEY GENERAL OF DELAWARE,
D. Del. No. 1:22-cv-01500

———————

CHRISTOPHER GRAHAM, ET AL.,
*Plaintiff-Appellants in No. 23-1634,*

*v.*

ATTORNEY GENERAL OF DELAWARE,
D. Del. No. 1:23-cv-00033

ON APPEAL FROM THE DENIAL OF A MOTION FOR A PRELIMINARY INJUNCTION
BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

**BRIEF OF MASSACHUSETTS, NEW JERSEY, CALIFORNIA, COLORADO, CONNECTICUT, THE DISTRICT OF COLUMBIA, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES**

MATTHEW J. PLATKIN
   *Attorney General of New Jersey*
Jeremy M. Feigenbaum
   *Solicitor General*
Angela Cai
   *Deputy Solicitor General*
25 Market St, P.O. Box 080
Trenton, NJ 08625
(862) 350-5800
angela.cai@njoag.gov

ANDREA JOY CAMPBELL
   *Attorney General of Massachusetts*
Julie Green
Grace Gohlke
   *Assistant Attorneys General*

One Ashburton Place
Boston, MA 02108

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTERESTS OF THE AMICI STATES ................................................... 1

SUMMARY OF THE ARGUMENT ......................................................... 2

ARGUMENT ............................................................................................. 4

I.    To Promote the Safety and Well-Being of Our Residents, States
      Impose a Range of Restrictions, Including Prohibitions, on
      Dangerous Weapons and Accessories Not Commonly Used for
      Self-Defense. ...................................................................................... 4

II.   Delaware's Restrictions on Assault Weapons and Magazine
      Capacity Comport with the Second Amendment................................ 8

      A.    Plaintiff-Appellants Cannot Show that Their Conduct Is
            Protected by the Second Amendment. ....................................... 9

      B.    Delaware's Restrictions on Assault Weapons and
            Magazine Capacity Are Relevantly Similar to Historical
            Restrictions on New, and Distinctly Dangerous, Forms of
            Weaponry. .................................................................................17

CONCLUSION .........................................................................................28

CERTIFICATES .......................................................................................31

ADDENDUM ...........................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*,
910 F.3d 106 (3d Cir. 2018)............................................................1, 11, 25, 26, 27

*Aymette v. State*,
21 Tenn. 154 (1840) ................................................................................23

*Beauharnais v. Illinois*,
343 U.S. 250 (1952) ................................................................................21

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023)......................................................................6

*Chiafalo v. Washington*,
140 S. Ct. 2136 (2020) ............................................................................19

*DiFiore v. CSL Behring, LLC*,
879 F.3d 71 (3d Cir. 2018)........................................................................11

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........................................................................*passim*

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011)....................................................................19

*Friedman v. City of Highland Park*,
784 F.3d 406 (7th Cir. 2015)........................................................15, 20, 27

*Guedes v. ATF*,
920 F.3d 1 (D.C. Cir. 2019) .......................................................................6

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ..........................................................24, 27

*Karns v. Shanahan*,
  879 F.3d 504 (3d Cir. 2018)..................................................................11

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) .........................................................15, 27

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ...............................................................................2

*Nat'l Ass'n for Gun Rights v. Lamont*,
  No. 22-cv-1118, __ F.Supp.3d __, 2023 WL 4975979
  (D. Conn. Aug. 3, 2023) .......................................................................14

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015)...................................................................27

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ...................................................................*passim*

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ..............................................................................19

*Ocean State Tactical v. Rhode Island*,
  No. 22-cv-246, __ F.Supp.3d__, 2022 WL 17721175
  (D.R.I. Dec. 14, 2022)........................................................................9, 10

*Oregon Firearms Fed'n v. Kotek*,
  No. 22-1815, __ F.Supp.3d __, 2023 WL 4541027
  (D. Or. July 14, 2023) ......................................................10, 11, 15, 16

*Range v. Att'y Gen.*,
  69 F.4th 96 (3d Cir. 2023) ...................................................................20

*Roth v. United States*,
  354 U.S. 476 (1957) .............................................................................21

*State v. Reid*,
  1 Ala. 612 (1840)..................................................................................27

iii

*United States v. Booker*,
  644 F.3d 12 (1st Cir. 2011) ...................................................20

*United States v. Morrison*,
  529 U.S. 598 (2000)..........................................................1

*United States v. Salerno*,
  481 U.S. 739 (1987)..........................................................1

*United States v. Stevens*,
  559 U.S. 460 (2010) .........................................................21

*Worman v. Healey*,
  922 F.3d 26 (1st Cir. 2019) ....................................15, 26, 27

## Statutes

Public Safety and Recreational Firearms Use Protection Act,
  Pub. L. No. 103-322, 108 Stat. 1998 (1994) .....................5, 6

National Firearms Act of 1934,
  Pub. L. No. 73-474, 48 Stat. 1236 (1934) ...........................24

18 U.S.C. § 921(a) ...............................................................5

18 U.S.C. § 922(v) ...............................................................5

18 U.S.C. § 922(w) ..............................................................6

1837 Ala. Laws 7, ch. 77, § 2 ...............................................23

1839 Ala. Laws 67, ch. 77, § 1 .............................................23

W. Ball, Revised Statutes of the State of Arkansas, Adopted
  at the October Session of the General Assembly of Said State,
  A.D. 1837, § 13, 280 (1838)................................................23

1881 Ark. Acts 191, no. 96, § 3 ............................................24

1933 Cal. Stat. 1169 ...................................................................................25

An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other
  Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat.
  650 (1932) ............................................................................................25

An Act to Amend the Delaware Code Relating to Deadly Weapons,
  H.B. 450, 151st Gen. Assemb. (Del. 2022) ..........................................27

Del. Code tit. 11, § 1465 ........................................................................2, 8

Del. Code tit. 11, § 1466 ...........................................................................8

Del. Code tit. 11, § 1468 ...........................................................................8

Del. Code tit. 11, § 1469 ...........................................................................8

1838 Fla. Laws 36, no. 24, § 1 ................................................................23

1837 Ga. Acts. 90, § 1 .............................................................................23

An Act to Regulate the Sale, Possession and Transportation of Machine Guns,
  1931 Ill. Laws 452, no. 18, §§ 1-2 ........................................................25

1819 Ind. Acts 39 ....................................................................................23

1932 La. Acts 336, no. 80, § 1 .................................................................25

An Act to Regulate and License the Selling, Purchasing, Possessing and
  Carrying of Certain Firearms, 1927 Mich. Pub. Acts 888, no. 372, § 3 .............24

1933 Minn. Laws 231, ch. 190, § 1 .........................................................25

1927 R.I. Pub. Laws 256, ch. 1052, §§ 1, 4 ............................................25

1821 Tenn. Acts 15, ch. 13 ......................................................................23

1837-38 Tenn. Acts 200, ch. 101, §1 .......................................................23

v

1879 Tenn. Acts 135, ch. 96 ...................................................................24

1923 Vt. Acts and Resolves 930, ch. 235, § 5711 .................................25

1838 Va. Acts 76, ch. 101 ......................................................................23

1934 Va. Acts 137, ch. 96.......................................................................25

## Rules and Regulations

Fed. R. App. P. 29(a)(2) .............................................................................1

## Miscellaneous

J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP.
  PROBS. 400 (1934) ..............................................................................27

S. Calabresi & S. Agudo, *Individual Rights Under State Constitutions When*
  *the Fourteenth Amendment was Ratified in 1868: What Rights Are Deeply*
  *Rooted in History and Tradition?*, 87 TEX. L. REV. 7 (2008) ..............19

H.R. Rep. No. 103-489 (1994)..................................................................2

C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993)...........22, 23

## INTERESTS OF THE *AMICI* STATES

The *Amici* States—Massachusetts, New Jersey, California, Colorado, Connecticut, the District of Columbia, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington—have "a significant, substantial and important interest in protecting [our] citizens' safety." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*, 910 F.3d 106, 119 (3d Cir. 2018) ("*ANJRPC*"), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (quotation marks omitted). In furtherance of this interest, and pursuant to Fed. R. App. P. 29(a)(2), we submit this brief to explain why Delaware's regulation of the purchase and possession of assault weapons and large-capacity ammunition magazines is wholly consistent with the Second and Fourteenth Amendments to the United States Constitution.

There are few interests more paramount to state governments than protecting public safety, and especially "the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987). The *Amici* States bear the solemn responsibility of ensuring the safety of the public and private spaces that make up the fabric of daily life in a free and democratic society. The *Amici* States work every day to promote our residents' health, welfare, and security, including by taking steps

1

to curb the threat of gun violence that harms our residents and inhibits their exercise of constitutionally-protected freedoms.

Exercising our police powers in service of these goals, the *Amici* States have adopted a range of measures that regulate weapons and accessories, while ensuring that our residents have access to weapons for individual self-defense. Although our regulations differ in substance, we share the firm conviction that our Constitution allows States to address gun violence in a manner that is adapted to individual States' needs and consistent with our Nation's historical traditions. In accordance with these objectives, the *Amici* States urge this Court to affirm the district court's conclusion that Delaware's choice to restrict access to certain exceptionally lethal weapons and accessories with distinctly military origins, which are also "the weapons of choice in many of the deadliest mass shootings in recent history." *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019), *abrogated by Bruen*, 142 S. Ct. 2111, comports with the Constitution.

## SUMMARY OF THE ARGUMENT

The Second Amendment is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Bruen*, 142 S. Ct. at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Recognizing that "reasonable firearms regulations" can coexist comfortably with the Second Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010)

(plurality op.), the States have adopted a variety of restrictions on weapons and accessories. This case concerns two such measures: in 2022, Delaware adopted laws that, subject to certain exceptions, prohibit the possession and sale of assault weapons and limit possession of ammunition magazines capable of holding more than 17 rounds ("large-capacity magazines" or "LCMs") to law enforcement officers, members of the armed forces, other government officials, and people with concealed carry permits. *See* Del. Code Ann. tit. 11, §§ 1465–1466, 1468–1469. Like similar laws around the country that restrict certain weapons, accessories, and ammunition, Delaware's laws preserve the right of law-abiding, responsible citizens to use firearms for self-defense. The State's regulation of assault weapons applies only to those weapons with enhanced "capability for lethality—more wounds, more serious, in more victims—far beyond that of other firearms in general, including other semiautomatic guns." H.R. Rep. No. 103-489, at 19-20 (1994). And its LCM law applies narrowly to magazines that "make it possible to fire a large number of rounds without re-loading, then to reload quickly when those rounds are spent," so that "a single person with a single [semiautomatic] weapon can easily fire literally hundreds of rounds within minutes." *Id.* at 19.

Employing the framework set forth in *Bruen*, the district court correctly concluded that the plaintiffs-appellants' Second Amendment challenge to Delaware's laws is not likely to succeed on the merits. App.34. That conclusion

should be affirmed. Assault weapons and large-capacity magazines are not "Arms" under the plain text of the Second Amendment because they are not commonly used, nor are they suitable, for self-defense. And historical understandings of the term "Arms" did not encompass container accessories such as large-capacity magazines. Moreover, the district court correctly concluded that Delaware's laws are constitutional because they are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. From the early days of our Nation, States and the federal government have restricted novel forms of weaponry that pose unique dangers to public safety. This analogous tradition amply justifies Delaware's measured restrictions on assault weapons and magazine capacity today.

## **ARGUMENT**

### I.    **To Promote the Safety and Well-Being of Our Residents, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapons and Accessories Not Commonly Used for Self-Defense.**

The Supreme Court has long been clear that the Second Amendment "extends only to certain types of weapons." *Heller*, 554 U.S. at 623-25. States and the federal government retain latitude to regulate categories of weapons and accessories, including by restricting the public carry, possession, and sale of weapons that are not commonly used for self-defense and that pose a threat to our communities. Indeed, the Court has recognized the constitutionality of laws banning categories of bearable weapons—among them, "short-barreled shotguns," and "M-16 rifles and the like"— because certain "type[s] of weapon[s]" are simply "not eligible for Second

Amendment protection." *Id.* at 621-23, 625, 627 (emphasis removed).

Consistent with that guidance, States and the federal government have adopted laws that impose restrictions, including prohibitions, on certain categories of particularly lethal weapons that are not suitable for or commonly used in self-defense. Like the federal government from 1994 to 2004,[1] nine States and the District of Columbia prohibit the purchase and possession of semiautomatic assault weapons.[2] Although state definitions of the prohibited class of weapons differ, they typically encompass weapons like AR-15 and AK-47-style rifles that inflict catastrophic injuries and have distinct combat capabilities, rendering them ubiquitous and uniquely devastating in mass shootings.[3] Thirteen jurisdictions ban automatic-fire machine guns, subject to limited exceptions,[4] while 26 States and the federal government ban machine guns manufactured after May 19, 1986, require registration of machine guns owned before that date, or impose other restrictions.[5] Nine States and the District of Columbia also prohibit short-barreled shotguns or

---

[1] Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1996-2010, codified at 18 U.S.C. §§ 921(a), 922(v) (2000).

[2] *See* Appendix Table 1.

[3] *See id.*

[4] *See* Appendix Table 2.

[5] *See* Appendix Table 3.

rifles,[6] while the federal government and 22 other States impose restrictions on those weapons.[7] Four jurisdictions prohibit high-caliber rifles,[8] five prohibit guns hidden in canes and other covert weapons,[9] and 19 jurisdictions and the federal government ban grenades, rocket launchers, or other hand-held destructive devices.[10]

States and the federal government likewise regulate accessories that cannot by themselves be used for offensive or defensive purposes but nevertheless enhance the lethality of weapons. Fourteen States and the District of Columbia restrict the size of ammunition magazines that may be used with semiautomatic weapons, while allowing for possession and sale of smaller-capacity magazines.[11] While 11 of these jurisdictions set a capacity limit at 10 rounds, others, like Delaware, set a higher capacity limit.[12] Eighteen jurisdictions and the federal government ban bump stocks, trigger cranks, binary triggers, rapid-fire trigger activators, or other devices used to

---

[6] *See* Appendix Table 4.

[7] *See* Appendix Table 5.

[8] *See* Appendix Table 6.

[9] *See* Appendix Table 7.

[10] *See* Appendix Table 8.

[11] *See* Appendix Table 9. From 1994 to 2004, the federal government also banned handgun and long-gun magazines capable of holding more than 10 rounds. *See* Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1998-2000, codified at 18 U.S.C. §§ 921(a), 922(w) (2000).

[12] *See id.*

approximate an automatic rate of fire with a semiautomatic weapon.[13] Silencers or suppressors, used to muffle the sound of a gun when it fires, are banned in eight States and the District of Columbia[14] and subject to restrictions or registration requirements by the federal government and 20 more States.[15]

States and the federal government also restrict the type and size of ammunition that can be purchased or possessed. While all States allow for robust access to ammunition, at least 26 jurisdictions prohibit especially dangerous forms of ammunition. Twenty-one jurisdictions and the federal government prohibit the possession or sale of armor-piercing bullets, a type of ammunition designed to penetrate metal or armor.[16] Nine prohibit ammunition designed to explode, detonate, or segment upon impact.[17] Multiple jurisdictions prohibit certain large-caliber ammunition, usable with 50- or 60-caliber weapons[18]; hollow-point bullets, designed

---

[13] *See* Appendix Table 10. Courts have split on the lawfulness of the federal regulations construing the statutory term "machine gun" to include bump stocks. *See Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *petition for cert. pending*, No. 22-976; *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 789 (2020).

[14] *See* Appendix Table 11.

[15] *See* Appendix Table 12.

[16] *See* Appendix Table 13.

[17] *See* Appendix Table 14.

[18] *See* Appendix Table 15.

to expand in their target on impact[19]; and Flechette shells, expelled from guns as pieces of metal wire or dart-like projectiles.[20] Others ban certain forms of shotgun ammunition: "Dragon's breath" shells, which are used to simulate a flamethrower by making shotguns spew fireballs or columns of flames, and bolo shells, designed as two or more metal balls connected by a metal wire.[21]

All told, across our country today, States and the federal government impose restrictions, including prohibitions, on a diverse array of especially dangerous weapons, accessories, and ammunition. Delaware's laws prohibiting assault weapons and restricting magazine capacity is of a piece with this tapestry of regulation and, as discussed below, a long history of governmental efforts to deter violence and promote public safety.

## II.    Delaware's Restrictions on Assault Weapons and Magazine Capacity Comport with the Second Amendment.

Against the backdrop of state regulation of unusually dangerous weapons and accessories, and in light of mounting deaths and injuries from mass shootings, Delaware chose in 2022 to ban assault weapons and impose restrictions on large-capacity magazines for semiautomatic firearms, while preserving broad access to

---

[19] *See* Appendix Table 16.

[20] *See* Appendix Table 17.

[21] *See* Appendix Table 18.

firearms commonly used for self-defense and magazines that hold up to 17 rounds of ammunition. *See* Del. Code Ann. tit. 11, §§ 1465–1466, 1468–1469.

That choice was constitutional. Under *Bruen*, courts must evaluate a Second Amendment challenge by making two inquiries. First, courts must ask if the Second Amendment right is implicated—*i.e.*, whether its "plain text covers an individual's conduct." 142 S. Ct. at 2126. If it does not, "the regulated activity is categorically unprotected." *Id.* Second, if the conduct is protected, courts ask if the restriction nevertheless accords with "the Nation's historical tradition of firearm regulation." *Id.* Under either step, Delaware's restrictions prove valid.

### A.    Plaintiff-Appellants Cannot Show that Their Conduct Is Protected by the Second Amendment.

Plaintiffs-appellants did not, and cannot, show their proposed conduct—to possess and carry assault weapons and LCMs—is protected by the Second Amendment. *Id.* That is so for two independent reasons. First, as to LCMs, these magazines are not bearable "Arms" under the plain text of the Second Amendment as historically understood. Second, neither LCMs nor assault weapons are commonly used or suitable for self-defense—a requirement for Second Amendment protection. *See Bruen*, 142 S. Ct. at 2134 (inquiry is whether weapons are "'in common use' today for self-defense" (quoting *Heller*, 554 U.S. at 627)).

1. As accessories, LCMs are not bearable "Arms." To determine whether the Second Amendment covers the challenged item, courts conduct "a 'textual analysis'

9

focused on the 'normal and ordinary' meaning of the Second Amendment's language" in its historical context. *Id.* (quoting *Heller*, 554 U.S. at 576-77). While the Second Amendment does "cover[] modern instruments that facilitate armed self-defense," the question is whether LCMs would fall into the "historical understanding" of the term bearable Arms. *See, e.g.*, *Ocean State Tactical v. Rhode Island*, No. 22-cv-246, __ F.Supp.3d__, 2022 WL 17721175, at *11 (D.R.I. Dec. 14, 2022), *appeal pending*, No. 23-1072 (1st Cir.).

The preliminary-injunction record establishes that LCMs are not bearable Arms. The record contains unrebutted linguistics expert evidence that the term "Arms," as it was understood in the 18th and 19th centuries, included weapons like firearms, but did *not* cover accessories not necessary to operate the weapon, like cartridge cases, boxes, scabbards, and flint, which were referred to as "accoutrements." SA394, 397-98; *see also* SA409-413. As containers that hold bullets, LCMs are analogous to cartridge cases, which performed the same function and were considered "accoutrements," not "arms." SA419. Other courts have reached that exact conclusion after examining the same historical evidence as in this case, holding that plaintiffs "failed in their burden to demonstrate that LCMs are 'Arms' within the meaning of the Second Amendment's text." *Ocean State Tactical*, 2022 WL 17721175, at *2; *Oregon Firearms Fed'n v. Kotek*, No. 22-1815, __

F.Supp.3d __, 2023 WL 4541027, at *25 (D. Or. July 14, 2023), *appeal pending*,
No. 23-35479 (9th Cir.).

Both plaintiffs-appellants and the district court err by refusing to grapple with
this historically-grounded textual analysis on the mistaken belief that Third Circuit
precedent ties this Court's hands. *See DSSA* Br. 10; *Gray* Br. 14-15; App.21-22. But
this Court's decision in *ANJRPC*, 910 F.3d 106, does nothing of the sort. Because
the parties to that appeal did not litigate whether LCMs are "arms" under the Second
Amendment's text as historically understood, the Third Circuit's discussion was
limited to one short paragraph stating: "[b]ecause magazines feed ammunition into
certain guns, and ammunition is necessary for such a gun to function as intended,
magazines are 'arms' within the meaning of the Second Amendment." *Id.* at 116.[22]
That *functional* explanation did not address this record's evidence regarding the
*historical* meaning of bearable "Arms," a question not presented in *ANJRPC*.

Because *ANJRPC* is a means-ends decision that predates *Bruen*, its brief
paragraph regarding "arms" without examining the historical context is no longer

---

[22] No one disputes that ammunition is "necessary" for firearms to operate. *See
Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring). But record
evidence demonstrates LCMs in particular are never necessary to operate a firearm.
SA453-54; *e.g.*, *Oregon Firearms Fed'n*, 2023 WL 4541027, at *26 (same).
Delaware's statute does not eliminate a person's ability to obtain or use ammunition,
nor restrict the number of 10- or 17-round magazines someone can possess.
*ANJRPC*'s reasoning that magazines are arms thus does not dictate that LCMs in
particular are protected as "Arms."

binding. *See DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018) (agreeing fresh look appropriate when Supreme Court decision "undermine[s] the rationale" of circuit cases); *Karns v. Shanahan*, 879 F.3d 504, 514-515 (3d Cir. 2018) (same). Given the law as it stood then, *ANJRPC* did not conduct the extensive historical assessment of the meaning of "Arms" that the Supreme Court now requires and the record in this case elucidates. *See, e.g.*, *Bruen*, 142 S. Ct. at 2132 (although the Second Amendment covers arms that did not exist at the Founding, "the Second Amendment's *definition* of 'arms' is fixed according to its historical understanding" (emphasis added)). Under current law, this Court must grapple directly with the historical meaning of "Arms."

2. Plaintiffs-appellants run into a second, dispositive problem at the threshold question of whether the Second Amendment applies at all: neither assault weapons nor LCMs are "'in common use' today for self-defense," an established predicate for Second Amendment protection. *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627). This Court has never considered this issue. *See ANJRPC*, 910 F.3d at 117 (expressly reserving this question). Considerable record evidence shows the weapons and accessories at issue here are not commonly used for self-defense. Plaintiffs-appellants have no serious answer to that evidence; instead, they erroneously urge this Court to simply tally the number of weapons and accessories in circulation.

There is abundant, uncontested record evidence establishing that LCMs and assault weapons are not commonly used for self-defense. That record shows that LCMs and assault weapons are designed for military combat and do not "facilitate [] armed self-defense," *Bruen*, 142 S.Ct. 2132. Assault weapons are designed to inflict catastrophic injuries by firing high-velocity bullets at long range, and they can easily penetrate walls to injure bystanders, making them poor civilian self-defense weapons. SA472-74. In fact, one of the designers of the AR-15, the quintessential assault weapon, explained that it was "designed for … military use. It wasn't really designed as a sporting rifle." App.347-48. And later the AR-15 "was adopted by the American military and produced as the M16," *id*., which the Supreme Court indicated States may ban. *Heller*, 554 U.S. at 55 ("[W]eapons that are most useful in military service—M-16 rifles and the like—may be banned."). LCMs similarly have a "military heritage." SA454.

Statistical evidence shows that LCMs and assault weapons are rarely, if ever, used in self-defense scenarios. Assault weapons were used for self-defense purposes in 0.2% of active shooter incidents in the period spanning 2000 to 2021. SA341. And when individuals used firearms for self-defense, they fired an average of 2.2 shots. SA331-33. Expert analysis found no incidents where a defender fired more than seventeen rounds. SA338.

13

Instead of rebutting this evidence or proving LCMs and assault weapons are commonly used or suitable for self-defense, plaintiffs-appellants erroneously pressed—and the district court erroneously adopted—a different methodology: looking *only* to whether the weapons are "in circulation today" in high quantities. App.18-19.[23] But a simple circulation tally—even if plaintiffs-appellants could bear that evidentiary burden at this stage—is simply not the correct test.

First, the precedent is clear: the test for whether a specific weapon falls within the Second Amendment right turns on whether it is in common *use* for self-defense, not common *ownership*. *See Bruen*, 142 S. Ct. at 2138 (referring to "commonly *used* firearms for self-defense"); *id.* at 2156 (describing "right to bear commonly *used* arms in public"); *see also Heller*, 554 U.S. at 636 (striking down an "absolute prohibition of handguns held *and used* for self-defense") (emphases added). The phrase "in common use," as used in *Heller*, *McDonald*, and *Bruen* does not refer to an individual's motivation for purchasing a firearm. Instead, courts must consider whether the weapon actually "facilitate[s] armed self-defense," which is "the central component of the Second Amendment right." *Bruen*, 142 S. Ct. at 2132-33 (citation omitted). That makes sense: many may *believe* that owning a grenade or machine gun or short-barreled shotgun would be maximally helpful for self-defense, but that

---

[23] The court concluded that assault pistols and copycat weapons are not in common use for self-defense because plaintiff-appellants did not adduce sufficient evidence even of the circulation-tally test. App.17-18.

alone cannot justify Second Amendment protection for such weapons. *See Nat'l Ass'n for Gun Rights v. Lamont*, No. 22-cv-1118, __ F.Supp.3d __, 2023 WL 4975979, at *26 (D. Conn. Aug. 3, 2023), *appeal pending*, No. 23-1162 (2d Cir.) (rejecting relevance of argument "that a modern American citizen might want to possess a military-grade weapon" for Second-Amendment inquiry); *Oregon Firearms Fed'n*, 2023 WL 4541027, at *30 (holding purchasers' "subjective intent" cannot be dispositive). *Bruen* requires analysis of the suitability and the actual use of the weapon for self-defense—which did not happen below.

Second, a tally approach of ownership figures is hopelessly circular. Put bluntly, the number of weapons in circulation depends in significant part on when the government enacted legislation prohibiting it. Had governments banned AR-15s the moment they became commercially available, the number of such firearms in circulation would be negligible. But "[i]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015); *Worman*, 922 F.3d at 35 n.5 (similar). Just as "[a] law's existence can't be the source of its own constitutional validity," the converse is true: that governments did not uniformly prohibit a certain firearm for the initial years of commercial production cannot be the reason why the firearm is presumptively protected by the Constitution. *Kolbe v. Hogan*, 849 F.3d 114, 141 (4th Cir. 2017), *abrogated on other*

*grounds by Bruen*, 142 S. Ct. 2111. And if a tally threshold were all that was needed to make a firearm protected by the Second Amendment, manufacturers could "flood[] … the market prior to any governmental prohibition in order to ensure it constitutional protection"—a wholly illogical proposition. *Id.*; *see also Oregon Firearms Fed'n,* 2023 WL 4541027, at *28.

The history of machine guns are particularly illustrative. *Heller* was clear the Second Amendment does not protect machine guns because they are "not typically possessed by law-abiding citizens for lawful purposes," and found "startling" the suggestion that machine guns are entitled to constitutional protection. *Heller*, 554 U.S. at 624-25. But under plaintiffs-appellants' logic, machine guns could be protected. The record below contains data from the Bureau of Alcohol, Tobacco, Firearms, and Explosives showing there were hundreds of thousands of civilian-owned machine guns still in circulation in the United States prior to 1986, when federal law made their manufacture illegal. App.15-16. But plaintiffs-appellants' test would mean that machine guns benefit from Second Amendment protection, at odds with *Heller*'s instruction, simply because of their circulation-tally, and so that test cannot be the proper approach under precedent and logic.

The district court and plaintiffs-appellants ask the wrong question. Had they considered whether these weapons were actually in common use for self-defense or

even suitable for that purpose, the record would have compelled a contrary holding at the first step. This Court can and should affirm on that basis.

**B.      Delaware's Restrictions on Assault Weapons and Magazine Capacity Are Relevantly Similar to Historical Restrictions on New, and Distinctly Dangerous, Forms of Weaponry.**

Should this Court nevertheless assume that assault weapons and large-capacity magazines are protected "Arms," it should affirm the district court's correct finding on this record that there exists a longstanding tradition of restrictions that are relevantly similar to Delaware's present-day enactments.[24]

1. When "the Second Amendment's plain text covers an individual's conduct," restrictions on weapons are constitutional if the government can demonstrate that such restrictions are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30. While the Supreme Court has left open the question whether a court should "primarily" look to Founding-era or Reconstruction-era history in evaluating the nation's traditions, *id.* at 2138, the logic and methodology of *Bruen* and *Heller* compel the conclusion that courts must consider the broad sweep of our country's history—including

---

[24] The district court was correct to reject plaintiff-appellants' position that the Court need not look to historical evidence if a given weapon is in common use for self-defense purposes. App.23-24. After all, although handguns are undoubtedly in common use for self-defense and are thus "presumptively protect[ed]," *Bruen* explained that is not the end of the inquiry. 142 S. Ct. at 2130. The government may then "justify its regulation" of the commonly-used weapon "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

nineteenth- and twentieth-century history—when reviewing the constitutionality of a state law.

In both *Heller* and *Bruen*, the Supreme Court conducted a thorough examination of eighteenth- and nineteenth-century statutes and case law in assessing the constitutionality of the challenged laws. *See Bruen*, 142 S. Ct. at 2142-56; *Heller*, 554 U.S. at 600-19. The Court made clear that post-ratification history is not only relevant, but also a "critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605; *Bruen*, 142 S. Ct. at 2136 (same). *Heller* conducted an extensive review of post-ratification sources from 1803 to 1891, *see* 554 U.S. at 605-19, and *Bruen* did likewise through 1890, *see* 142 S. Ct. at 2145-54. *Heller* stressed the importance of post-ratification history to elucidate "the public understanding of a legal text in the period after its enactment or ratification," and took pains to distinguish post-ratification history, which it endorsed, from "postenactment legislative history," which it dismissed as a "contradiction in terms." 554 U.S. at 605 (emphasis removed).

This comprehensive approach accords with governing first principles. States are "bound to respect the right to keep and bear arms because of the Fourteenth Amendment," ratified in 1868, "not the Second" Amendment, ratified in 1791. *Bruen*, 142 S. Ct. at 2137. The public understanding of the scope of constitutional rights shared by those who adopted the Fourteenth Amendment must therefore carry

significant weight in the historical analysis. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."); S. Calabresi & S. Agudo, *Individual Rights Under State Constitutions When the Fourteenth Amendment was Ratified in 1868: What Rights Are Deeply Rooted in History and Tradition?*, 87 TEX. L. REV. 7, 115-16 (2008) ("[T]he question is controlled not by the original meaning of the first ten Amendments in 1791 but instead by the meaning those texts and the Fourteenth Amendment had in 1868."). Thus, courts have recognized that, "when state- or local-government action is challenged, … the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified." *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011).

*Bruen* also explained that "'a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases' in the Constitution." 142 S. Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2136, 2326 (2020)). A governmental practice not directly contrary to the text of the Constitution may thus "'guide [a court's] interpretation of an ambiguous constitutional provision,'" particularly where the practice "'has been open, widespread, and unchallenged since the early days of the Republic.'" *Id.* at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in the judgment)). *Bruen* itself offered

an example of such liquidation: while the Second Amendment's text does not speak directly to the constitutionality of laws prohibiting firearms in sensitive places, the Court was "aware of no disputes regarding the lawfulness of" such enactments during the eighteenth and nineteenth centuries, so the Court "assume[d] it settled that" governments can constitutionally prohibit firearms in certain sensitive places. 142 S. Ct. at 2133.

Twentieth-century history bears on the historical inquiry for the same reason. While twentieth-century history that "'contradicts earlier evidence'" is not probative, *Range v. Att'y Gen.*, 69 F.4th 96, 104 n.8 (3d Cir. 2023) (en banc) (quoting *Bruen*, 142 S. Ct. at 2154 n.28), the Supreme Court has relied on twentieth-century history in its Second Amendment rulings. In *Heller*, the Court characterized laws that originated in the twentieth century—among them, laws banning people with felony convictions or mental illness from possessing weapons—as "longstanding" and "presumptively lawful." 554 U.S. at 626-27 & n.26; *see United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011) ("[T]he modern federal felony firearm disqualification law … is firmly rooted in the twentieth century."). Similarly, "*Heller* deemed a ban on private possession of machine guns to be obviously valid," but "states didn't begin to regulate private use of machine guns until 1927." *Friedman*, 784 F.3d at 408. The presumptive lawfulness of these twentieth-century measures was reaffirmed by a majority of the Court in *Bruen*. *See* 142 S. Ct. at 2157 (Alito, J.,

concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).[25]

*Bruen* and *Heller* also "repeatedly compared the right to keep and bear arms" to the right to free speech, noting that "the government must generally point to *historical* evidence about the reach of the First Amendment's protections." *Id.* at 2130 (citing *United States v. Stevens*, 559 U.S. 460, 468-71 (2010)) (emphasis in original). When analyzing whether categories of speech fall outside the scope of the First Amendment, the Supreme Court has looked beyond Founding-era history to laws and practices that predominated in the nineteenth and twentieth centuries. In holding obscene speech unprotected by the First Amendment, for example, the Court looked to "the international agreement of over 50 nations," "the obscenity laws of all of the 48 States," and "the 20 obscenity laws enacted by the Congress from 1842 to 1956." *Roth v. United States*, 354 U.S. 476, 484-85 (1957). Similarly, in concluding that libel enjoys no such protection, the Court focused not only on colonial-era criminal codes and legal developments in the decades after ratification, but also on the contemporary criminal codes of the States. *Beauharnais v. Illinois*, 343 U.S. 250, 254-56 (1952).

---

[25] In *Range*, this Court recognized the twentieth century origins of the federal felon-in-possession statute but concluded that the federal government had not adequately justified its application to people like the plaintiff, who had been convicted of a non-violent state misdemeanor for making a false statement to obtain food stamps. *See* 64 F.4th at 103-06.

This Court thus may, and should, consider nineteenth- and twentieth-century practice in assessing Second Amendment challenges to state laws.

2. Laws like Delaware's that restrict unusually dangerous weapons and accessories have a long historical pedigree. Since the early days of our republic, governments have restricted access to uniquely dangerous weapons that pose an inordinate public safety risk once those weapons emerged in the commercial market.

To determine whether a challenged statute is consistent with a historical tradition of firearms regulation, *Bruen* explained, courts must reason by analogy. 142 S. Ct. at 2131-32. Cases like this—since assault weapons and large-capacity magazines were "unimaginable" to our forebearers—that implicate "unprecedented societal concerns or dramatic technological changes" demand a "nuanced" approach to analogical reasoning, one that looks to whether, over the course of history, there have existed "relevantly similar" analogues. *Id.* at 2132 (citing C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)); *see* App.341-42. While the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar," it made clear that "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33 (stressing that "individual self-defense is the *central component* of the Second Amendment right" (quotation marks omitted)). In applying these metrics, courts must bear in mind that the analogical

inquiry is not a "regulatory straightjacket," and a modern-day regulation need not be a "dead ringer for historical precursors" to be "analogous enough to pass constitutional muster." *Id.* at 2133.[26]

From the colonial period through the twentieth century, States and the federal government have adopted measures that, like Delaware's, regulate novel, and unusually dangerous, weapons and accessories that contributed to crime without corresponding utility for self-defense. This regulatory practice followed a predictable pattern: first, new weapons technologies were developed; second, they spread into society and created a public safety threat; and third, governments began enacting regulations to dampen weapons-related criminality and violence. In the early nineteenth century, States increasingly began imposing restrictions on weapons like Bowie knives[27] and pocket pistols[28] that were contributing to rising murder rates. *See Aymette v. State*, 21 Tenn. 154, 158 (1840) (in upholding law banning sale and

---

[26] That nuanced approach accords with how analogical reasoning is described in the scholarly sources upon which *Bruen* relied. *See* 142 S. Ct. at 2132. For example, as Cass Sunstein's study explained, analogical reasoning is similar to common-law reasoning, with "the important advantage of allowing a large degree of openness to new facts and perspectives." Sunstein, *supra*, at 782.

[27] *See, e.g.*, 1837 Ga. Acts. 90, § 1; Ch. 77, § 2, 1837 Ala. Laws 7, 7; No. 24 § 1, 1838 Fla. Laws 36, 36; Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200; Ch. 101, § 1, 1838 Va. Acts 76, 76; Ch. 77, § 1, 1839 Ala. Laws 67, 67.

[28] *See, e.g.*, 1819 Ind. Acts 39; 1821 Tenn. Acts ch. 13, p. 15; W. Ball, Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, § 13, 280 (1838); Ch. 101, § 1, 1838 Va. Acts 76, 76.

concealed carry of Bowie knives, distinguishing between protected weapons and "weapons which are usually employed in private broils, and which are efficient only in the hands of the robber and the assassin"). Many of the laws prohibited concealed carry of these weapons, and some, like Arkansas's and Tennessee's postbellum statutes regulating pocket pistols, likewise banned sales. *See* An Act to Prevent the Sale of Pistols, ch. 96, § 1, 1879 Tenn. Acts 135-36; 1881 Ark. Acts 191, no. 96, § 3.

During the 1920s and 1930s, the Nation witnessed a new wave of regulation of emergent weapons that threatened public safety. During this era, "at least 32 states enacted anti-machine gun laws" which prohibited or regulated automatic-fire weapons. App.333, App.415. Similarly, Congress enacted the first nationwide firearms regulation statute, the National Firearms Act of 1934, to restrict machine guns, short-barreled shotguns, and other dangerous weapons. App.334. *See* Pub. L. No. 73-474. During these decades, at least eight jurisdictions also banned semiautomatic weapons shortly after they began to proliferate, typically in the same legislation that established the accepted tradition of banning machine guns. App.335-36; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1270 (D.C. Cir. 2011) ("*Heller II*") (Kavanaugh, J., dissenting) (machine guns "have traditionally

been banned").[29] In the same era, regulations limiting magazine capacity were also common: twenty-three States imposed some limitation, typically restricting the number of rounds to between five and eighteen.[30]

This tradition of regulating unusually dangerous weapons and accessories is relevantly similar to Delaware's assault weapon and large-capacity magazine laws in how and why the enactments burden the right to armed self-defense. With respect to how: both types of measures regulate specific dangerous weapons or accessories used for criminal and other violent purposes, rather than standard weapons of self-defense. Unlike the laws at issue in *Heller* and *Bruen*, the enactments at issue here, like their historical antecedents, do not amount to a ban on an entire class of arms or effectively prohibit citizens from carrying firearms for self-defense. *Contrast Bruen*, 142 S. Ct. at 2156; *Heller*, 554 U.S. at 628; *see ANJRPC*, 910 F.3d at 117 (law that "prohibits possession of magazines with capacities over ten round[s] does not categorically ban a class of firearms"); App.33 (Delaware's assault weapons law "is

---

[29] *See* An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, no. 372 § 3, 1927 Mich. Pub. Acts 888, 888-89; Ch. 1052 §§ 1, 4, 1927 R.I. Pub. Laws 256, 256-57; An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat. 650, 650 (1932); Ch. 190, § 1, 1933 Minn. Laws 231, 232; Ch. 96, 1934 Va. Acts 137-40.

[30] *See, e.g.*, 1933 Cal. Stat. 1169, 1170; No. 80, § 1, 1932 La. Acts 336, 337; An Act to Regulate the Sale, Possession and Transportation of Machine Guns, no. 18, §§ 1-2, 1931 Ill. Laws 452-53; An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, ch. 235, § 5711, 1923 Vt. Acts and Resolves 930.

not a categorical ban").

The analogical reasoning prescribed by *Bruen* does not require that a historical tradition be the same "type" of regulation as the modern one, nor does it suggest that the only analogue for a weapon-specific ban is another weapon-specific ban. Rather, *Bruen* and *Heller* both relied on the *degree* of burden when evaluating proposed historical analogues. *See Bruen*, 142 S. Ct. at 2145 (examining whether analogues imposed a comparably "substantial burden"); *Heller*, 554 U.S. at 632 (similar). And Delaware's laws impose, at most, a negligible burden on the right to self-defense. *See ANJRPC*, 910 F.3d at 118 ("unlike the handgun ban in *Heller*, a prohibition on large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves" because the law allows "law-abiding citizens to retain magazines" (internal quotation marks omitted)); *Worman*, 922 F.3d at 37 (law banning assault weapons and large-capacity magazines "does not heavily burden the core right of self-defense" because using these weapons for self-defense "is tantamount to using a sledgehammer to crack open the shell of a peanut"). Indeed, as the record below establishes, assault weapons and large-capacity magazines are virtually never used for self-defense. *See supra* at 12-13. In the same way, the tradition of regulating specific and particularly dangerous weapons used for criminality likewise did not meaningfully burden self-defense capabilities.

The purpose of Delaware's laws is also relevantly similar to the purpose of

this tradition of regulation: to enhance public safety in the face of new weapon technology that has threatened, or already inflicted, significant harm on American citizens. The Bowie-knife restrictions of the early 1800s, for example, were intended "to promote personal security, and to put down lawless aggression and violence." *State v. Reid*, 1 Ala. 612, 617 (1840). And the early twentieth-century regulation of machine guns and semiautomatic weapons stemmed from concern over the "growth of armed gangsterism [that] resulted in the use of more deadly weapons by criminals." J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP. PROBS. 400, 405 (1934); *see also* App.336. Modern-day laws restricting assault weapons and magazine capacity are likewise a response to the proliferation of these weapons in a contemporary form of lawlessness and violence: mass public shootings. As the Delaware General Assembly found, "assault-style weapons have been used disproportionately to their ownership in mass shootings." An Act to Amend the Delaware Code Relating to Deadly Weapons, H.B. 450, 151st Gen. Assemb. (Del. 2022). Courts have likewise widely recognized that because assault weapons and large-capacity magazines were designed for military use and to inflict exceptionally high mortality rates and rates of injury, they have been the "weapons of choice in many of the deadliest mass shootings in recent history." *Worman*, 922 F.3d at 39; *accord ANJRPC*, 910 F.3d at 118; *Kolbe*, 849 F.3d at 126-27; *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 262-63 (2d Cir. 2015), *abrogated on other*

*grounds by Bruen*, 142 S. Ct. 2111; *Friedman*, 784 F.3d 411; *Heller II*, 670 F.3d at 1262-64.

In choosing to restrict assault weapons and the capacity of magazines within its borders, Delaware acted to prevent these harms, without correspondingly burdening the right to self-defense. Its choice is consistent with a long tradition of relevantly similar historical antecedents, and it comports fully with the Second Amendment.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm.

Respectfully submitted,

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Jeremy Feigenbaum
*Solicitor General*
Angela Cai
*Deputy Solicitor General*
25 Market St, P.O. Box 080
Trenton, NJ 08625

Julie Green
Grace Gohlke
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108

(862) 350-5800
angela.cai@njoag.gov

Date: August 23, 2023

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*The District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
Queen Street,
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*State of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that I am an attorney in good standing of the bar of the Third Circuit.

/s/ Angela Cai
Angela Cai
Deputy Solicitor General
Office of the New Jersey Attorney General
NJ Bar #121692014

Dated: August 23, 2023

## <u>CERTIFICATION OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 6,496 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

3.    The text of the paper copies of this brief and the text of the PDF version of this brief filed electronically with the Court today are identical.

4.    Prior to electronically filing this brief with the Court today it was scanned by McAfee VirusScan Enterprise 8.8, a virus detection software, and found to be free from computer viruses.


/s/ Angela Cai
Angela Cai
Deputy Solicitor General
Office of the New Jersey Attorney General


Dated: August 23, 2023

## <u>CERTIFICATION OF SERVICE</u>

On August 23, 2023, the undersigned caused this brief to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via electronic filing. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Angela Cai
Angela Cai
Deputy Solicitor General
Office of the New Jersey Attorney General

Dated: August 23, 2023

## ADDENDUM PURSUANT TO FED. R. APP. P. 32(f)

### Table 1: Assault Weapon Restrictions

The following jurisdictions restrict the possession or sale of assault weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
| --- | --- |
| **California** | Cal. Penal Code §§ 30500-30515, 30600, 30605. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202a-202c. |
| **Delaware** | Del. Code tit. 11, §§ 1465-1466(a). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(3A), 7-2502.01, 7-2502.02(a)(6). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.9. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-303. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New York** | N.Y. Penal Law §§ 265.00(22), 265.02(7). |
| **Washington** | Wash. Rev. Code §§ 9.41.0001, 9.41.010(2), 9.41.240 (2023 Wash. Sess. Laws, ch. 162, § 1). |

## **Table 2: Laws Banning Automatic Weapons**

The following jurisdictions ban automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 32625. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(5), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(10), 7-2502.01, 7-2502.02(a)(2). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(i). |
| **Iowa** | Iowa Code §§ 724.1(a), 724.3. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1751 to 40:1752. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Minnesota** | Minn. Stat. § 609.67. |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Rhode Island** | R.I. Gen. Laws § 11-47-8(a). |

| Wisconsin | Wis. Stat. § 941.26(1g)(a). |
|-----------|------------------------------|

### Table 3: Laws Requiring Registration of Pre-1986 Automatic Weapons

The following jurisdictions require that all automatic weapons manufactured before 1986 be registered with a licensing agency as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|----------------|----------------------|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(C). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53-202. |
| **Florida** | Fla. Stat. §§ 790.001(9), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(2), 16-11-122, 16-11-124(4). |
| **Indiana** | Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-8-10. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, §§ 1051-1052. |
| **Maryland** | Md. Code Ann. §§ 4-401 to 4-405. |

| | |
|---|---|
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(a), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(a). |
| **Montana** | Mont. Code Ann. §§ 45-8-302 to 45-8-304. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6. |
| **Tennessee** | Tenn. Code Ann. §§ 39-17-1302(a)(3), (d). |

| | |
|---|---|
| **Texas** | Tex. Penal Code §§ 46.01(9), 46.05(a)(1)(B). |
| **Virginia** | Va. Code §§ 18.2-288 to 18.2-298. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(29), 9.41.190. |
| **West Virginia** | W. Va. Code § 61-7-9. |

### Table 4: Laws Banning Short-Barreled Shotguns or Rifles

The following jurisdictions ban possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 33210, 33215. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(4), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(15), (17), 7-2502.01, 7-2502.02(a)(1), (a)(3). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(ii). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 121; Mass. Gen. Laws ch. 269, § 10(c). |

| | |
|---|---|
| **Minnesota** | Minn. Stat. § 609.67. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(o), 2C:39-3(b). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16), 11-47-8(b). |

### Table 5: Laws Restricting Short-Barreled Shotguns or Rifles

The following jurisdictions restrict the possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(6), 921(a)(8), 922(a)(4). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(D). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iv), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Florida** | Fla. Stat. §§ 790.001(10)-(11), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(4)-(5), 16-11-122, 16-11-124(4). |
| **Iowa** | Iowa Code § 724.1C. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |

| | |
|---|---|
| **Michigan** | Mich. Comp. Laws § 750.224b. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(b). |
| **Montana** | Mont. Code Ann. § 45-8-340. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.275. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-02-03. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6. |
| **Texas** | Tex. Penal Code §§ 46.01(10), 46.05(a)(1)(C). |

| | |
|---|---|
| **Washington** | Wash. Rev. Code §§ 9.41.010(41)-(42), 9.41.190. |
| **Wisconsin** | Wis. Stat. § 941-28. |

### **Table 6: Laws Banning 50-Caliber and Other High-Caliber Rifles**

The following jurisdictions ban possession of rifles designed to shoot 50-Caliber and other High-Caliber ammunition.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 30530, 30600, 30610. |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(8A), 7-2502.01, 7-2502.02(a)(7). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(15)-(16), 5/24-1.9. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(3), (5), 2C:39-3(a). |

## **Table 7: Laws Banning Covert Weapons**

The following jurisdictions ban possession of covert and hidden firearms as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Alabama** | Ala. Code § 13A-11-54. |
| **California** | Cal. Penal Code § 24410. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 131N. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(hh), 2C:39-3(m). |
| **New York** | N.Y. Penal Law § 265.02(6). |

## **Table 8: Laws Banning Destructive Devices**

The following jurisdictions ban the possession of grenades, rocket launchers, bombs, and other destructive devices as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16460, 18710. |
| **Colorado** | Colo. Rev. Stat. § 18-12-109(2)(a). |
| **Connecticut** | Conn. Gen. Stat. § 53-80(a). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1444(a)(1), (b)(1). |

| | |
|---|---|
| **District of Columbia** | D.C. Code § 22-4515a. |
| **Florida** | Fla. Stat. §§ 790.001(4), 790.161. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(iii). |
| **Iowa** | Iowa Code §§ 101A.1(2A), 724.1(1)(c), 724.3. |
| **Massachusetts** | Mass. Gen. Laws ch. 266, § 102(c). |
| **Minnesota** | Minn. Stat. § 609.668. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(1), 2C:39-3(a). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-21. |
| **Utah** | Utah Code Ann. § 76-10-306(3). |
| **Virginia** | Va. Code Ann. § 18.2-85. |

| Wisconsin | Wis. Stat. § 941.26(2)(c). |

## Table 9: Laws Restricting Magazine Capacity

The following jurisdictions restrict the quantity of rounds able to be fired from a single magazine as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16740, 32310. |
| **Colorado** | Colo. Rev. Stat. §§ 18-12-301, 302, 303. |
| **Connecticut** | Conn. Gen. Stat. § 53-202w(a)(1). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1468, 1469(a). |
| **District of Columbia** | D.C. Code § 7-2506.01(b). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.10. |
| **Maryland** | Md. Code Ann., Crim. Law § 4-305(b). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j). |

| New York | N.Y. Penal Law § 265.02(8). |
|---|---|
| **Oregon** | 2022 Oregon Ballot Measure 114, § 11. |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3. |
| **Vermont** | Vt. Stat. Ann. Tit. 13, § 4021. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(22), 9.41.370. |

## **Table 10: Laws Banning Bump Stocks**

The following jurisdictions ban the possession of bump stocks, trigger cranks, trigger activators, and other devices designed to artificially increase the rate of fire for semi-automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b); 27 C.F.R. 447.11, 478.11, 479.11. |
| **California** | Cal. Penal Code § 32900. |
| **Connecticut** | Conn. Gen. Stat. § 53-206g. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(6), (b)(2). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |

| | |
|---|---|
| **Florida** | Fla. Stat. § 790.222. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8.5. |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(14). |
| **Iowa** | Iowa Code § 724.29. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-305.1(a). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Michigan** | Mich. Comp. Laws § 750.224e. |
| **Minnesota** | Minn. Stat. § 609.67. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.274. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff), 2C:39-3(*l*). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(3), (19), 11-47-8(d), 11-47-8.1. |

| Vermont | Vt. Stat. Ann. tit. 13, § 4022. |
|:---:|:---|
| **Virginia** | Va. Code Ann. § 18.2-308.5:1. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(5), 9.41.220. |

## Table 11: Laws Banning Silencers

The following jurisdictions ban the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|:---:|:---|
| **California** | Cal. Penal Code § 33410. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(3), (b)(1). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(6). |
| **Massachusetts** | Mass. Gen. Laws ch. 269, § 10A. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(g), 2C:39-3(c). |
| **New York** | N.Y. Penal Law § 265.02(2). |

| | |
|---|---|
| **Rhode Island** | R.I. Gen. Laws § 11-47-20. |

## Table 12: Laws Restricting Silencers

The following jurisdictions restrict the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. § 921(a)(3); 26 U.S.C. §§ 5841(a), 5845(a)(7), 5861. |
| **Alaska** | Alaska Stat. §§ 11.61.200(a)(3), (c), (h)(1)(B). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(ii), 13-3102(A)(3), 17-251. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Georgia** | Ga. Code Ann. §§ 16-11-121(7), 16-11-122. |
| **Iowa** | Iowa Code § 724.1B. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(4). |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(b), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(c). |

| Montana | Mont. Code Ann. § 45-8-337. |
|---|---|
| Nevada | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| North Carolina | N.C. Gen. Stat. § 14-288.8. |
| North Dakota | N.D. Cent. Code § 62.1-05-01. |
| Ohio | Ohio Rev. Code Ann. §§ 2923.11(K)(5), 2923.17(A), (C)(5). |
| Oregon | Or. Rev. Stat. § 166.272. |
| Pennsylvania | 18 Pa. Cons. Stat. § 908. |
| South Dakota | S.D. Codified Laws §§ 22-1-2(8), (17), 22-14-6. |
| Vermont | Vt. Stat. Ann. tit. 13, § 4010. |
| Washington | Wash. Rev. Code § 9.41.250(1)(c). |
| Wisconsin | Wis. Stat. § 941-298. |

## **Table 13: Laws Banning Armor-Piercing Ammunition**

The following jurisdictions ban the possession of ammunition designed to penetrate body armor or vehicle armor as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(17)(B)-(C), 922(a)(7)-(8). |
| **Alabama** | Ala. Code § 13A-11-60(a). |
| **California** | Cal. Penal Code §§ 16660, 30315, 30320. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(1), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(i), 7-2506.01(a)(3). |
| **Florida** | Fla. Stat. §§ 790.31(1)(a), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Indiana** | Ind. Code Ann. § 35-47-5-11.5. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(6). |
| **Kentucky** | Ky. Rev. Stat. Ann. §§ 237.060(7), 237.080. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1810-40:1812. |

| | |
|---|---|
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, § 1056. |
| **Michigan** | Mich. Comp. Laws § 750.224c. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.273. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(gg), 2C:39-3(f). |
| **North Carolina** | N.C. Gen. Stat. § 14-34.3. |
| **Oklahoma** | Okla. Stat. tit. 21, §§ 1289.19-1289.22. |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20.1. |
| **South Carolina** | S.C. Code Ann. § 16-23-520. |
| **Texas** | Tex. Penal Code §§ 46.01(12), 46.05(a)(2). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

## **Table 14: Laws Banning Explosive Ammunition**

The following jurisdictions ban the possession of high-explosive incendiary ammunition designed to explode or impart energy upon contact via a charge as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(b), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-3.1(a)(6). |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.3. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.4). |
| **New York** | N.Y. Penal Law § 265.01(7). |
| **Tennessee** | Tenn. Code Ann. § 39-17-1304(b). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

## Table 15: Laws Banning Large-Caliber Ammunition

The following jurisdictions ban the possession of large-caliber ammunition as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 18735. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(2), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(iii), 7-2506.01(a)(3). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-1.9(a)(6), (b), (c) (possession ban effective Jan. 1, 2024). |

## Table 16: Law Banning Hollow-Point Bullets

The following state bans the possession of hollow-point and other ammunition designed to expand on impact as part of its firearm safety laws.

| *State* | *State Law* |
|---|---|
| **New Jersey** | N.J. Stat. Ann. § 2C:39-3(f). |

## **Table 17: Laws Banning Flechette Ammumition**

The following states ban the possession of flechette shells, or other ammunition that can be fired in a firearm and that expels two or more pieces of fin-stabilized solid metal wire or two or more solid dart-type projectiles, as part of their firearm safety laws.

| *State* | *State Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16570, 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(f), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |

## **Table 18: Laws Banning Dragon's Breath and Bolo Shells**

The following states ban the possession of "Dragon's Breath" shells, ammunition that when fired produces sparks and flames simulating a flamethrower, and bolo shells, ammunition containing two or more large lead balls connected by a wire, that when used may sever a target's limb, as part of their firearm safety laws.

| *State* | *State Law* |
|---|---|
| **Florida** | Fla. Stat. §§ 790.31(1)(d)-(e), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.2, 724.3. |